Good morning, Your Honors. This case is controlled by a narrow but important principle of federal preemption law, and it is that a party cannot be required to pay money under state law for exercising a privilege or complying with the duty created by federal law. What's the duty here, and why is it in conflict with the federal, why does the federal law preempt the state law, and how do you explain that the, as I understand the record, if I'm not wrong, or if I'm wrong, let me know, I believe it was his supervisor or the manager, King, who fired him. Correct. And the sole reason for his firing, as I understand it, is that they had to because of the change in ownership of the company, that his visa was no longer valid. Right. Yet, at the same time, an accommodation was made to his fellow employee for the same reason, and yet this person was not given that opportunity. Am I missing something in the record? I think that it's fair to say that the company allowed another employee to stay on. No, that's not, well, then you and I have a problem. Even though. Then you and I have a problem. It didn't allow it. They asked counsel to get him an H-1B visa, okay? But they did not ask counsel to get, to get, I'm going to forget. Mr. Incalza. Mr. Incalza. Right. An H-1, one H-B visa. Correct. And the record suggests that the reason for that, and the stated reason was. I don't want to know what it suggests. I want to know what the record says. Records? What the client did. Sure. The record says that the reason for that was that counsel believed the H-1B visa was likely to be approved for Mr. Graziani, who was the other employee, but was not likely to be approved for Mr. Incalza. And the jury could have believed that, but you could also have believed that's not the case. That's your problem. You know, you stand there and you tell us, well, that's the reason, but that's not right. You are no longer here at trial. You are now looking, you are now on appeal, so you have to accept the facts in the light most favorable to the verdict. So I think you can't say the reason they fired him was because of the visa. All you can say is that they claimed that to be the case, and the jury must have found that wasn't the reason. And if you assume that that wasn't the reason, I don't see where you have your great big conflict with federal law. Well, let me begin with our purpose conflict argument, and I'll come to impossibility conflicts. But there's no conflict at all, because your premise that they fired him for this reason has been knocked out by the jury verdict. You have to assume that was not the reason, that that was a lie conveniently put forward by your client in the hope of getting rid of an employee. That's how we read the jury verdict. And if you want to read the jury verdict some other way, you have to explain to me based on the jury structures or the evidence or something as to why we should read it any different way. Our preemption argument does not depend on contesting the jury verdict. Our preemption argument is that the judge should have. Well, I'm afraid it does. Does your preemption argument rest on the idea or the presumed fact that the reason he was fired was because of a violation, because it was not? No. So they fired him for some other reason having nothing to do with the immigration laws. The statutory duty. I'm asking a question. And my answer is that the statutory duty doesn't depend on the company's motive. Once the company learns under the statute, once the company learned that Mr. Incalza no longer had a valid visa, the statute requires the company to fire him. Even if the company has another motive. It is not allowed to put him on unpaid leave? No. It's not. Hoffman addresses that. Hoffman says that as soon as the employer finds out that the employee is no longer authorized, that the employer is required to discharge the employee, not put him on leave. Your company violated the law with respect to the other employees. We're not disputing that. That's correct. Am I correct that you agree that the company violated the law with respect to Grissini? The company was required to terminate him. The company had a duty to terminate him. And they violated the law. They had a duty to terminate him. They deliberately violated the law with respect to Grissini. They had a duty to terminate him. You know, you keep repeating yourself. I'm not answering the question. You're not answering the question. They were in violation of the law and not firing him. Okay. I'll agree with that. Now, where in Hoffman does the Supreme Court, and I have Hoffman in front of me, discuss putting on unpaid leave? Hoffman doesn't deal expressly. Well, I asked you a specific question. Right. I said they could have put him on unpaid leave. And you said, no, they couldn't. Look at Hoffman. I don't see where in Hoffman it is, so I'm giving you a chance now to back up what you said. Sure. I've got Hoffman in front of me, and I'm willing to look at whichever portion of it you wish to point me to. Hoffman uses the word discharge. It says, and I think this is at page 148 of the court's opinion. It says that an employer has a duty to discharge an employee upon discovery of his undocumented status. And so you may ask, well, does discharge encompass putting him on leave? And I think the answer to that is no, not only because the word discharge is so different from putting on leave, but also because every federal law or regulation that we've found that looks at the status of personnel who are on leave treats them as employees. Under the National Labor Relations Act, for example, someone who is on a leave of absence from a company is treated as an employee for purposes of voting in union elections and that sort of thing. So that's a debatable point, whether you're correct or not. Could you have discharged them and said, but we will rehire you, promise to rehire you as soon as you mend your status? The company could have done that. Did it do that? It did not. But if Mr. Incalza had asserted a claim for wrongful failure to rehire, we would have a very different case. They are claiming a breach of the covenant of good faith and fair dealing, which is part of the – that this was a wrongful termination in the sense it was not done in good faith. Right. But the claim, as you point out, the claim – and the only claim at issue here is count four of the complaint, which was an alleged breach of the common law duty not to terminate except for good cause. So his only claim was directed at the termination, not the failure to rehire or nothing else. It was just a straight termination claim. And in that regard, I thought a lot about which of the Supreme Court's preemption cases this case is most analogous to. And it seems to me it's very unusual for a state law duty to result in the imposition of money damages for compliance with the federal law duty. But the one – the case that I found that I think is most analogous is McCulloch v. Maryland from nearly 200 years ago, in which the Supreme Court held, among other things, that a state could not impose a tax or a fine on a national bank or its employees. And the plaintiff in McCulloch was the bank cashier from the Baltimore branch of the First National Bank of the United States. He had had a fine imposed upon him for conducting transactions without having paid the tax to the state of Maryland that Maryland had imposed on the First National Bank. And Chief Justice Marshall, in that decision, gave the first articulation of what is now known as the Purpose Conflict Doctrine. And that is the states, as he said, have no power by taxation or otherwise to retard, impede, or burden the operations of the constitutional laws enacted by Congress. Any such action is preempted because, as the Court later put it in Hines v. Davidowitz, it stands as an obstacle to the accomplishment of Congress's objectives. And as I mentioned, there's no – You know, if the state had said – passed a law that said if you fire someone for being an illegal agent – Right. Under state law, you must pay that person $10,000. Right. That would be a pretty good argument you would have on preemption. But that's not what the state said. The state didn't say you can't fire him for being an illegal agent. They said you can't fire him for some other reason. And the jury said you fired him for a different reason. Well, the duty that federal law imposes here is that as soon as the employer knows that the employee is no longer authorized, the employer has to terminate it. Are you relying on Hoffman for that? Hoffman and the plain language of the statute. The statute itself makes it illegal for an employer to, quote, in the United States, knowing that the alien is or has become an unauthorized alien with respect to such employment. Now, counsel – there's some arguments and some discussion with regard to advice of counsel. Counsel – outside counsel advised – and I mispronounced. I think it's Graziani. Graziani could get this 1HB visa. Right. How does that fit in with the law? You're saying that he had to be fired – He is not in compliance with the law. Okay. So you're saying that even though – and did counsel tell you at that time in the record, does it say that counsel said you must also fire Graziani immediately? Counsel did not tell the company, at least as far as the record reflects, that you have to fire anybody. But counsel did clearly tell the company – I wanted to stop right there. I was going to ask that. So nowhere were you ever advised that you had to fire counsel because the law required not only that he lost their visa, but you immediately have to fire them. No, that's correct, but that's not the test under the statute. The statute turns on the employer's knowledge that the visa is no longer valid, and there's no dispute that that was conveyed to the employer. But you also conveyed that he could also – not only was the visa invalid, but there was a way to get a visa in 15 days by paying $1,000, the 1HB visa, which you did for Graziani. Correct. But you had never instructed counsel to get one for your client. That's correct. Or give him a chance to pay the $1,000 if your client wasn't willing to pay the $1,000. I'm guessing he would have been happy to pay the $1,000 since he was, after all, willing to take unpaid leave for a longer period, which I'm sure was more than $1,000. But the statute required the company to terminate both employees. Your position is the statute required the company to act in this particular way. Didn't counsel testify in this case that they could have gotten a visa for Mr. Incalza in 15 days as well? I don't think so. Well, he said that it might have been slightly more difficult because he wasn't actually aware of the facts. He gave two reasons, one of which was that one had two years of post-secondary school education. In fact, the plaintiff also had that kind of education, but counsel didn't know it. But he said that it might be slightly easier to get one than the other. He didn't say that we couldn't get one and we could get the other. In fairness, I don't think he said it would be slightly easier. I think he testified that it would be very difficult to get an H-1B visa for Mr. Incalza, and the key difference was that Mr. Graziani had already had an H-1B visa and Mr. Incalza did not. How many people get H-1B visas for the first time? I don't think that's a bar, but maybe we can check the actual state. The letter that the company got made no such distinction. The letters treated them identically. It used Mr. Graziani or whatever his name was as an example, but the letter said that with respect to the issues concerning Mr. Graziani and Mr. Incalza, please take note of the following. And then he does it in terms of Mr. Graziani. If your honors look at pages, I think it's about page 187 through 189 of the excerpts of record, Mr. Lerner testified at trial. The letter that the company had when it made its decision to fire, in which it treats them identically. Right, there was an email. But Mr. Lerner, on the pages that I indicated, elaborates on the advice that he gave to the client and indicates that he told the client that it would be much more difficult to get an H-1B visa for Mr. Incalza. Could you read the part that says much more difficult? On page 187 he says Mr. Graziani would have possibly smoother sailing through the immigration process than Mr. Incalza. Possibly smoother sailing. You're right. That's not much more difficult. Let me look for that during my opponent's argument. But to come back to the preamble. They may not feel they need to argue. To come back to the preamble. I'm sorry. Excuse me. Is difficulty really the issue? I mean, that's what I'm trying to sort out here. We're starting to split hairs here. If he said it is impossible to get him a visa, is difficulty an issue if we get that far? It seems to me you don't get that far anyway. Because what you're saying, the mere fact that the law says that you can't hire him, it doesn't really matter what you told him and it doesn't matter what your subjective intent was. That's right. The law says you've got to fire him. And so even if you treated somebody else different, it really doesn't make any difference to this man. That's exactly right, Judge Brunetti. And, in fact, it would be absurd, as a matter of federal policy, to allow a company to be punished for acting lawfully, indeed complying with its federal duty with respect to one employee, because it failed to do so with respect to another employee. And this comes back to the purpose. Well, no. We're really punishing him for breaching his duties with respect to another employee. We're saying if you don't want to take consistent positions, you're going to get punished. Right. And if you had done it as to both employees, then he would have been in a very different position. And maybe if you decide to violate federal law as to another employee, we're not going to come out and save you. That's your punishment. I don't see the inconsistency there at all. And maybe if state law… There's nothing even rough about it. Isn't this exactly what you're asking the jury to say is, look, we can pick and choose where we're going to comply with the law. No. Well, I'm afraid that's what you're saying. The company can choose when to comply with the law. And we're going to take a position that when it comes to this employee, we can't possibly keep him on an hour longer. When it comes to this other employee, we choose to hold on and take our chances vis-a-vis possible penalties and criminal sanctions and all that stuff that you raise in your brief. And it is up to us to make the decision. And the jury can look at that and say, you know, we think you're lying. We think that this had nothing to do with immigration, that you decided simply to get rid of one employee because it was convenient, and your fear of being prosecuted federally is really undermined and belied by the fact that you were willing to brave it as to Mr. Garciano. We don't believe you. Liar, liar. But this depends on fire. But this is no more a jury question, Judge Kaczynski, than it would have been a proper jury question in McCulloch for a jury to be asked to decide whether Mr. McCulloch was making transactions pursuant to his duties. Maybe it's time to reconsider McCulloch. It's an old case. You know, if you have to rely on McCulloch v. Maryland to save your case, I think you had better go tell your client. I think it's kind of nice to hear somebody rely on McCulloch. Well, McCulloch is just the first. I cited McCulloch because McCulloch's a case in which, like this case, someone was punished financially for complying with a federal duty. It's not the kind of argument that only a lawyer would love. It sort of hangs together in a perverse way. No one buys it. It's so lacking common sense. Let me get the procedural aspect in here because now that I've got your argument, I want to make sure I'm in sync with you. First of all, you lost the first round on summary judgment. Right. And I assume we're going to talk about a legal error there. That is the error I've been discussing. Okay. Right. It now goes to the jury, and you get a verdict against you. In the meantime, the jury got expanded facts and whatever and made a ruling against you. Then you move for a motion for a new trial, and now we're reviewing the denial of the motion for a new trial. That's one of the decisions that you're reviewing, but we have appealed the denial of summary judgment in this court's decision. I'm going to get there. So now we've got the denial of a new trial to deal with and the motion for a new trial to deal with. You say we're erroneously denied, but they both bring back to one legal issue, as I understand it, and that is your right to say that the federal law says that you must fire, and that was a legal error made by the judge. That's correct. That's your sole grounds, as far as I can see. It's not our sole grounds, but it certainly is. Well, no, if you get the facts to the jury. We don't want to play with jury facts, I hope. We're not playing with jury facts here. How are you? Well, no, there is a separate issue as to whether there was enough evidence provided to the jury on which they could find. Aside from the sufficiency of the evidence, the only issue you have here is whether or not there was a legal mistake made by the judge in denying the summary judgment motion and the motion for a new trial relative to your duty under the federal law. That's correct. Okay. All right. Thank you, Captain. Good morning. Carney Shagarin appearing for the appellee, Giancarlo Incalza. Let's go right to the legal issue here. He seems, from what I understand from argument, it doesn't really matter what they did with Giancana. They could break the law, get him a visa, do anything they wanted to, and they can then separate Giancana and throw him off to the side and say, but the law says, and I have the fact that the federal law requires me to fire him, and I did tell him that, and that's all I told him was that I can't keep you on because you're in violation of the law, your visa is no longer invalid, and they're off the hook, and that the judge made a legal error in denying summary judgment motion, made a legal error in the motion for a new trial, and based upon that, you should get a reversal. Now, how do you see that argument? Not very well. You don't see it? You don't like it? It's wrong? What's wrong with it? It's wrong for three reasons. Number one, the question as to what motivated the employer was factually disputed on summary judgment. Okay. Now, he says that that's good. Now, I want to know what your legal authority is because he said it's a legal issue up there. Do you think it's a legal issue before the district judge on the motion for summary judgment? It's a legal issue whether it matters what his motive was. Correct. You're saying it doesn't matter, and that's a legal question. If he's required to fire him under the law, does it matter that he fires him for a different reason? Of course it does. Under the good cause standard in California. So the question is whether that statute is preempted, right? That part of the statute is preempted. Correct. The civil code that allows for an implied contract in this context. So we're looking now, we slide down the scale, until we move to the state law and see what the federal law does interacting with the state law. Correct. Okay. Now we're back to McCulloch v. Maryland. I just don't think so. The issue was very clear at the three stages before the trial court. Was there a factual dispute as to what motivated the termination? No, no, there is no factual dispute for the purposes of this question. We assume there's a factual dispute. Correct. The question is, does it matter what the reason for the discharge is, if they're required to fire him anyway? Of course it does. All right, but that's a legal question, not a factual question. I'm sorry, Your Honor, I'm not following really that. I'm not following the point. The point is that it's a legal issue whether it matters what the motive is, or whether that's irrelevant. I guess it would be a legal issue, correct. And she, the court … Judge Vernetti asked what your legal argument is as to why, if the employer is required by federal law to fire someone, why does it matter that he fired him for a different reason? Because … You said it was a state statute. That brings us to the next question. Can you have a state statute that penalizes someone for firing someone, whatever the motive, if he's required to fire him anyway? I believe so, if I'm understanding the question accurately. The whole question before the district court at every step wasn't this impossibility defense that we're hearing now in the appeal. In fact, the defendants don't even put before the court their answer, where they never raised impossibility as a defense at any time in this case. It's not really impossibility. It's a question of whether it's inconsistent with the federal statute, contrary to the policy and purpose of the federal law. See, I raised the question because we've got to get where we are. Procedurally, we're reviewing a motion for summary judgment and a motion for denial of a new trial. And so that's why I asked, are we in a legal area? Are we in a factual area? Where are we? And I think Judge Reinhart has gotten us right where we're supposed to be. And I'm sorry I interrupted you, but I'm trying to get that legal position. I'm sorry, Your Honor. I'm not understanding the question being posed to me. The question is this. If we're down to motion for summary judgment being denied, and the issue is if there's a preemption by the federal statute, then you have to go into the preemption doctrine that we're playing with here. What does the federal statute do when it intersects with the state statute, and why does it or why doesn't it preempt? And so that legal issue is described, as I understand, by the appellant saying, well, it preempts because the statute flat out says I have to fire them. So it doesn't really matter why I fire them. The statute says even if I took G and Connie and gave them all the benefits in the world, I had to fire these folks. Correct. And I don't think that is – I think it's a legal issue of comparing the statutes side by side if they conflict with each other in actuality, in practice. Why don't they conflict, then, and why doesn't it preempt? They clearly don't in this case because you have to ask the first question. Number one, is the evidence undisputed on summary judgment that this is the reason that they fired Mr. Ancaza, i.e., because they were following a federal statute? And by the mere fact that they had another employee who was in extremely similar circumstance per their own attorney was the phrase – I have another issue with you. I don't think this is productive. Do you agree that the federal statute requires immediate discharge and prohibits allowing the employee time on unpaid leave to seek a reason? I have not seen any law that states that, no. I have not seen any law that states that. I have not seen any cases interpreting the federal IRCA saying that, no, to answer the court's question. Well, let's continue on here. Just quickly, going back to Judge Murrow's decision, it's extremely long and extremely detailed, extremely full of facts. Yes. And I read it, and I read both of them. Now, you remind me, did she go on a disputed issue of fact or did she go on an issue of law? I believe she went on a disputed issue of fact with regards to this particular issue. On summary judgment, this was just raised as an attorney advice defense. It wasn't raised as a possibility or as is being discussed now that it would have been illegal as a matter of law. I don't know if it's illegal. It sounds to me like what counsel is saying is I have an employee. I'm faced with a decision because the visa is no longer valid and the law says I must fire him, so I fired him. It's not an impossibility. He just said that's my duty. It might be an impossibility in the sense it's impossible for me to continue on negotiating with you, getting you a one-age visa. I think he's made it very clean by saying the law just says no matter what I did with anybody else, I have to fire this man, and therefore I can't be held liable under this California statute relative to employment practices. Right. And on summary judgment, that issue was disputed. There were declarations submitted from our expert, Mr. Bonaparte, who described it wasn't required. There was no requirement to fire Mr. Ancalza at that point in time. There were at least three options. Who was Mr. Bonaparte? Bonaparte was, I believe, an immigration attorney practicing somewhere around 44 years. Did he bring an affidavit on a legal question? On a legal question. His expertise is in immigration law and the IRCA. Correct. And this was part of the moving papers, part of the papers in the summary judgment? On behalf of the appellee, yes, that we had submitted. Correct. Yes. And also the attorney, the outside attorney for the employer also proffered his position at that point. I don't think he did. I was looking at the record that was submitted by the appellate. Did it come through King's deposition? It came, I believe, through King's deposition where he said that he was advised by the attorney that he had to fire Mr. Ancalza. At trial, Mr. Lerner. Did he say that he was advised he had to fire him? Yes. That's what he said. That's what Mr. King, vice president of Defending North America, testified to at trial. I'm not sure about a deposition. No, that's my point. I've got to throw the trial out because we're still dealing with the summary. I don't remember, and I'll have to go back and check. I don't remember King saying that he was advised he had to fire him. I think he was advised about the status that resulted from the change in ownership of the company. I'm not sure. Because I think he was pretty close to what outside counsel's position was in your briefs. I'm not sure because I don't remember that business that he was advised by anybody that he had to fire him. I don't remember about summary judgment. I know at trial that's exactly what he said. Mr. Lerner came and testified via teleconference from New York saying, I never advised anyone of that, and Defending North America's position at trial was the opposite. Let's assume we get over that. We've now gone through the summary judgment. We're now at the motion for a new trial. We still have the same legal question, and so we can go back and take a look at, is there a legal error been made relative to allowing this to go forward? Because if, in fact, a legal decision should have been made that it didn't matter about these disputed issues, the fact that the law said he had to be fired anyway, do we have to do that again? And what would be the standard review if we now get to the motion for a new trial? My understanding as to an appeal from a Rule 59 motion is that the evidence is looked at in the light most favorable to the verdict, to the jury. That's the evidence. How about the law? Let's assume there was this glaring error of law there at the summary judgment state by Judge Murrell. We look at that again, don't we, at the motion for a new trial? I presume the court would. I'm not certain, to be frank with the court, as to what that standard would be for a reviewing court. Because that bothers me because at the time, if you get past that, the jury goes before the jury. The jury deliberation wipes out anything factual. And then the question is if there's going to be somehow the law area creeps in, that jury should never have heard that. But on this particular case, there was never this legal question that didn't involve a factual dispute. In other words, it wasn't an employer coming and saying, we have to follow this law, we always follow the law, we're very concerned about the law. I asked Mr. King at trial, what happened with Mr. Graziani? Did you ever determine if you were following the law, breaking the law with him? I'm paraphrasing. And his response was a very nonchalant, I don't know. Does that get us to pretext? In other words, if that's the case, if I understand your argument, even though you have this federal law and you're trying to look at the preemption issue, you have to slide down and see what the California law and what the California elements are, and you get into those before you can decide whether there's this automatic preemption because I've got to fire you. Sure. So you get by one case that says, well, if you've got a bad visa, you've got to fire him. You get down into the California law and see whether or not there's some slippage underneath there that, I guess, modulates the firing duty if there ever was one? I think you look at whether there is pretext, of course. Because if you don't get the pretext, I think you have a little problem. I mean, even when it gets to the jury, the heavy evidence is in the pretext, I think. And Judge Murrow kind of went that way, too, in both of her decisions. Sure. The question always is, for good causes, what is actually motivating the actual termination of the employee? What's the motivation? You could always theoretically come up with any good cause in your mind. There's lots of things you could point to and say, this was good, that's good, we didn't like this, we didn't like that. The question is, what's actually motivating them and what did the jury accept? Where is counsel going wrong with his argument that because the law says he must be fired and he cites various authority, where is he going wrong? It fails to recognize the pairing up of the particular federal law against the particular state law that seeks to be preempted? Is that the problem? It doesn't even apply in this case. The employer in this case disregarded the law. Well, now, wait a minute. It does because he says, the employer says, forget about my actions and about my subjective actions. I had a duty under the law to fire. Right. Well, if he has a duty of law under fire, does that totally automatically preempt or do you have to look at the law that's being preempted? I think you look at the law that's being preempted. In California, we have a specific civil code, a labor code, and a governmental code provided. Do we look at the preemption law to determine that? Because it sounds like we're trying to decide, what is the law of preemption? How do you decide a preemption issue? Isn't that where we're going? Well, I think that's where the defense are trying to take this case. But this was never raised at any stage in the proceeding in the lower court. It just never was raised as an affirmative defense. It never was raised as an argument. And even applying it here, the jury has already gotten the idea that they're claiming, well, we did this because we thought it was the legal thing to do. And they've rejected it because they had ten other options, ten other options. I'm just worried about a theory that said, okay, you had to fire him. That's fine. But at the same time, you had a duty to, in good faith, to try to get him a visa and promise to rehire him as soon as he got himself back and immigration status. Now, opposing counsel says, no, there's never a rehire theory presented by the plaintiff. But I'm wondering if that's the case. Well, I don't think so, because under California law, temporary impossibility is no defense. Temporary frustration of purpose is no defense. The parties have to act in good faith to keep the contractual terms being followed by both sides. In this case, Fendi North America had handled the immigration paper for Mr. Incaza since they brought him here from Italy back in 1990. I believe it was January of 1990. It would be a different situation if he on his own was dealing with his H-1B visas and the different visas he had over the years and was trying and unsuccessful and knew the details of it, was working with it himself. But Fendi had did it since day one. And it was their responsibility, I believe, to follow a good cause requirement before they fire him without any warning coming to his store saying, you're gone one day, to at least follow their own attorney's advice and apply for these alternate visas, one that I believe Mr. Lerner testified a trial could have resulted in a visa within two to three days, maybe 15 days at the most. I think all those facts are pretty solid. I think what counsel's arguing for is this silver bullet that says, forget about all those facts. I had such a duty under the federal law, which again goes back to preemption, that I can't consider all that when, in fact, if I read Judge Morrow's opinion, and I'm hearing you, what you do is you go down and what's been done is to analyze what is the California law? Because the federal law with regard to visas just didn't preempt everything in California. It preempted only a specific statute. So I guess you have to look at that statute. Because if it doesn't directly apply, as I understand preemption law, if it doesn't directly apply, then we have cases that say, well, we're not going to apply the preemption as far as this is concerned. You're just saying, as I understand your argument, rather than the silver bullet, the law says so, so we've got to do it. You've got to look and see what happens under the state law if you're faced with this visa problem. Correct. If there is a national conflict, and I don't see it ever having a rise in this case. If there's no conflict, no preemption. That's the way I see it, Your Honor, yes. Thank you, counsel. Thank you. Counsel, I have one question. Judge Morrow's two opinions are quite thorough. He's a very careful judge. There's no discussion that I can see in there of the preemption issue. Did you raise preemption? We repeatedly raised the conflict between the duty to terminate Mr. Incalza and state law to the extent that it would enforce an alleged implied contract. We cited Hoffman repeatedly. I say, yes, we raised the issue of preemption. I don't know that the word preemption was used, but the conflict between the federal duty and the- You didn't cite McCulloch. I'm sorry? You didn't cite McCulloch. We did not cite McCulloch. I would suspect from reading Judge Morrow's opinions that if you made a preemption argument, it was highly disguised. Well, she does talk about preemption in one of the footnotes of her opinion, so she understood that preemption was an issue. No, I understood she- That's what my problem is. Preemption isn't- If you pardon this, and this is not an opinion, just sort of a- It's not a silver bullet. Preemption is something that says we have a federal law and we have a state law. Don't follow and you can't follow state law because- Well, the only way you can get to the because, it seems like you have to analyze what the federal statute's doing when it interacts with the state law. And as I read Judge Morrow's opinion, like I said, they're very thorough and they go through everything. Did you ever ask her to file a motion for reconsideration on either one of those decisions? I don't believe so. So whatever she says, you pretty well agree that she had the issues there, but she got the wrong answer. That's right. That brings me back to the silver bullet. I'm having a problem finding that silver bullet or that she mishandled that unless you can- I know she did mention the preemption, but it was in that format that I'm talking about, seemed to me, and I'll read them again, that she said, here's the federal law, here's the state law, let's see how they interact. And her reasoning appears to have been that because federal law only required the termination and didn't expressly forbid the payment of money damages as a result of that termination, that that was okay. And that analysis completely ignores the whole doctrine of purpose conflict preemption, going back to McCulloch and then Hines v. Davidovitz and that whole line of decisions, many of them in the labor context, others in the bankruptcy context. Most of them say you can't penalize somebody for exercising a right granted under federal law. This is the unusual case. I'm going to have to go back and redo this. I took a quick look at Hoffman while you were talking. Hoffman involved someone who was an illegal alien who falsified his employment facts. It sounds like these cases slide off into facts again. I know the silver bullet is there, but you can't get there until you get into the facts of the case, and I think that's what Judge Morrow did, still with the underlying purpose that we've got to figure out whether there's preemption here. Well, and we're not claiming that the Immigration Reform and Control Act is a silver bullet that preempts sort of everything in its path. We're not arguing field preemption. Our preemption theory is very narrow, and that is when state law targets a termination that is required by federal law, then that targeting is preempted by the federal law. But with due respect, it's an automatic, your argument, because if, in fact, you say the law requires a termination, then it doesn't matter what state law says. It wouldn't matter if the state law was written on a tablet of gold. It wouldn't matter because if the state law applies the termination, you're saying, well, I've got to terminate, so that's it. If state law would impose a burden, to use Chief Justice Marshall's words, or if it would in some way stand as an obstacle, that is, create a disincentive, which is what most of these cases talk about, is creating disincentives for complying with the federal law. Well, you have a much more persuasive argument, perhaps, if your client didn't insist on picking and choosing which laws to comply with. I understand that. It's sort of saying, we rely on this great duty we have. You know, it's something a lawyer might say in court, but it just doesn't ring true, because if it's such a grave duty, then it seems to me your client should have complied with it in both cases. I think it's like McCulloch. Suppose that McCulloch had paid the tax to Maryland one year, and then the next year he says, you know, I'm not going to pay this tax again. You think that's analogous? I think it is analogous in the sense that you're all— I think when you go back, you're going to think about it, and you're going to realize there was a silly analogy. Well, the— What a bad try, though. Oh, I don't know. I don't think it's a very good try. Well, I apologize. The point is, though, that there's— The McCulloch was not asked to violate federal law. The question is, was he going to comply with the state law? I mean, here's a situation where your client actually chose to violate what it now claims is a sacred duty, that it forced him, forced it to fire the plaintiff, and yet it acted quite nonchalant about it as another employee. It just doesn't— You can see why it wouldn't wash with the jury. I can see why it wouldn't wash with the jury, but, you know, the plaintiff has not asserted a cause of action that would encompass inconsistent treatment between these employees. The cause of action— Why doesn't good faith of firing encompass consistency and say that when you do act inconsistently, that is evidence of bad faith? And if your client had said, look, we have this great duty to do, so what we're going to do is we're going to terminate him, but at the same time, we're going to put in for a visa for him, and we'll make him a promise that if you get your visa, you're going to be back hired, but, you know, we do have to technically fire you, but we're only doing it to comply with federal law, but we're taking all these steps to make sure that the termination is short-lived as possible and that we sort of make it up to you. You know, I don't think the jury would have come out that way. I think the jury would have been— You know, even if you had been out of work for a couple of weeks or months, I think the jury would have said, well, you know, you did everything you could, but on these facts, it could very well say, not absence of good faith, and there's nothing in federal law that requires your client to act in bad faith. There's no conflict between acting in good faith under state law and complying with federal law, and that's your problem. Here's the problem with the jury verdict, to follow up on that point. It may well be, and this is the reason why this case should have been thrown out before it ever got to the jury. It may well be that— That would have been another way of avoiding this. Well, but the problem with the jury verdict is that it may well be that the jury concluded, why, yes, federal law did require you to fire Mr. Incalza, but we really don't like the fact that you, you know, that you treated him differently, and therefore we're going to impose liability on you, even though we agree that you acted with good cause with respect to Incalza, and that would amount to punishing our client for having complied with federal law in this case and for having done so inconsistently, and that kind of a financial penalty is preempted. But you see, if you had acted in good faith, then the firing would have lasted for only a short time, and the jury would have viewed it very differently. You could have rehired him. You could have gone ahead and gotten him a—or tried to get him a visa, and then rehired him, or if, you know, unsuccessful in getting a visa, could have said, look, we did everything we could. You could have done that. There was nothing in federal law preventing you from doing that. And had you taken those steps, the jury might have treated the good faith question very differently. Your argument is that it doesn't matter whether it's good faith or bad faith. I assume you have to prevail on that. Your argument has to be that the federal statute entitles you to fire good faith, bad faith, and therefore the good faith portion of the statute is preempted as a clause. Yes, to the extent that it would impose liability for the termination required by the statute, that's right. As long as you have a right to have a bad faith termination. And that's because the statute imposes the duty. It requires termination. That's right. Whether the employer acts with a pure heart or a black heart— If you lose that argument, you lose. With respect to preemption. That's true. We—it often seems that, you know, that preemption issues are technical, that there wouldn't, but the preemption of state law by federal law is an important and an essential part of our system. And that's why the federal courts have been so vigilant, including the Supreme Court over the years, in ensuring that state law does not intrude into the performance of duties under federal law. And we believe that the district court ignored that fundamental principle and that she should have granted summary judgment. One quick question. Just one. As far as that proposition that this particular federal statute requires the firing, what is your best case on that? Which case do you rely on the most? Well, first of all, the statute itself, which makes it unlawful to continue to employ someone once the employer knows that he's unauthorized. What case law do you rely on? Hoffman is our strongest case law authority. This Court's decisions in Mester and a couple of others that we cited in our briefs are consistent with that. In fact, the Mester case affirmed a decision by the INS to impose pretty severe penalties on an employer based on a mere two-week delay between learning about the unauthorized status and letting the employee go. Do you think we have a duty to report you about Gassiano? I don't think so, but... I have friends at the INS, you know. So I hear. They once let me in. That was one of their mistakes. Thank you, Counsel. Thank you. The case just argued will be submitted. The final case for argument this morning is Guardado v. Home Depot.
judges: Reinhardt, Brunetti, Kozinski